### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

COURTNEY SILVERMAN, individually and on
behalf of all others similarly situated,

CASE NO:

     Plaintiff,

**CLASS ACTION**

v.

MOVE, INC. a California corporation, and
NATIONAL ASSOCIATION OF REALTORS,
an Illinois association,

     Defendants.

_____/

### CLASS ACTION COMPLAINT

Plaintiff, Courtney Silverman (hereinafter "Plaintiff"), individually, and on behalf of all

those similarly situated, by and through her undersigned counsel, brings this class action against

Defendants, Move, Inc. (hereinafter, "MI") and the National Association of Realtors (hereinafter,

"NAR") (collectively "Defendants"), alleging violations of the Telephone Consumer Protection

Act (hereinafter "TCPA"), 47 U.S.C. § 227, and in support thereof states as follows:

### I.  INTRODUCTION

1.  This is a class action stemming from Defendants' ruthless invasion of privacy,
which violated the TCPA.

2.  Defendant NAR owns the website Realtor.com.

3.  Defendant MI operates the website Realtor.com.

4.  In their persistent efforts to advertise and solicit business, Defendants, acting in
concert or on each-other's behalf, engaged in systematic text-message-advertising campaigns,
without regard for the law or the privacy rights of others.

[1759890/1]                                    1

5.      In furtherance of their campaign, Defendants sent unsolicited, invasive, advertising text-messages, using automatic telephone dialing equipment to the cellphones of Plaintiff and the Class, despite documented and ascertainable requests to "Stop."

6.      Plaintiff seeks to enjoin Defendants' illegal conduct, which has resulted in an invasion of privacy, and disruption of the daily lives of hundreds or thousands of Florida residents, and seeks statutory damages on behalf of herself and members of the Class as defined below, as well as any other available legal or equitable remedies.

## II.     PARTIES, JURISDICTION, AND VENUE

7.      Plaintiff is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

8.      Defendant NAR is an Illinois association, which transacts substantial business in Florida.

9.      Defendant MI, is a California corporation, which transacts substantial business in Florida.

10.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute.[1]

11.     This Court has personal jurisdiction over Defendant and venue is proper in this Court because Defendants transact substantial business in the forum and the events giving rise to Plaintiff's claims occurred in Broward County, Florida, including the unwanted text-messages that Defendants sent or caused to be sent to Plaintiff's cellular phone using an automatic telephone dialing system.

---

[1] *See Mims v. Arrow Fin. Services., LLC*, 132 S. Ct. 740, 744 (2012).

[1759890/1]                          2

## III.     THE TELEPHONE CONSUMER PROTECTION ACT

12.     The TCPA regulates and restricts the use of automatic telephone dialing or texting systems ("ATDS") to protect against harassing invasions of privacy.

13.     These ATDS devices allow Defendants to send hundreds or thousands of text-messages almost instantly, without regard to the identity, consent, or privacy of the recipients.

14.     Specifically, the TCPA provides that it shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States, to make any call using an ATDS to any telephone number assigned to a cellphone other than a call made for emergency purposes or made with the prior express consent of the called party.

15.     Importantly, cell-phone owners are entitled to the same consent-based protections for text-messages as they are for ATDS telephone calls.

16.     Defendants bear the burden of showing that it had Plaintiff's prior express written consent when sending her the text-messages, and must show that Plaintiff and the Class did not revoke consent or opt-out of receiving text messages.

## IV.     FACTS

17.     Plaintiff and the Class are "persons" as broadly defined by 47 U.S.C. § 153(39).

18.     Realtor.com, the official website of Defendant NAR, is operated by Defendant MI.

19.     Among other services, Realtor.com sells real-estate leads to real estate brokers, agents, and professionals across Florida and the country.

20.     Defendants MI and NAR, in order to advertise, solicit business, and sell real-estate leads, obtained the cellphone numbers of Plaintiff and the Class members.

21.     Defendants then proceeded to send or cause to be sent telemarketing text-messages to Plaintiff and the Class, using automatic telephone dialing equipment.

[1759890/1]                                3

22.    Defendants' text messages were incessant, and sent almost daily.

23.    To opt-out of receiving Defendants' text-messages, Defendants instructed recipients to respond to these text-messages with the word "Stop."

24.    However, Defendants' instruction was a misnomer, and its designated opt-out response a ruse.

25.    Indeed, Defendants began sending Plaintiff text messages in early 2018, and pursuant to Defendants' opt-out instructions, after each one, Plaintiff responded with the word "Stop."

26.    Unfortunately, Defendants' desire to sell real-estate leads exceeded its desire to adhere to the restrictions in the TCPA or its own opt-out instructions.

27.    Despite Plaintiff's "Stop" reply, Defendants continued to send almost daily text-messages to Plaintiff.

28.    Some examples of Defendants' solicitations are below:





29.     After the first time Plaintiff texted "Stop" to opt-out, Defendants sent Plaintiff over two-hundred (200) unsolicited, automatic text-messages.

30.     The texts came from a five-digit, non-conventional phone number or "Short Code," 649-94.

31.     This Short Code indicates that Defendants used an Automatic to Peer ("A2P") technology (or similar technology), which is the precise type of ATDS technology that the TCPA regulates.

32.     The generic nature of Defendants' text-messages, combined with the large number of messages sent by Defendants, further demonstrates that Defendants utilized an ("ATDS") to send the text-messages.

33.     Defendants' method of publishing material to potential consumers violated the privacy rights of those consumers.

34.     As a result of Defendants' TCPA violations, Plaintiff and the class suffered damages including, without limitation, invasion of privacy.

## V.     CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), on behalf of herself and a Class of others similarly situated defined as follows:

> **All Florida resident persons to which Defendants sent or caused to be sent a text message for Realtor.com using an ATDS after receiving the reply text message: "Stop."**

*Plaintiff anticipates the need to amend the class definition as discovery progresses*

36.     *Class Exclusions:* The following are excluded from the Class: 1) Defendants and their employees or agents; 2) Plaintiff's attorneys and their employees; 3) the Honorable Judge to

whom this action is assigned and any member of the Judge's staff and immediate family; 4) claims for personal injury, wrongful death, and/or emotional distress.

37.   ***Numerosity***: The exact number of Class members is unknown and not readily available to Plaintiff at this time, but it is evident that joinder is impracticable. Based upon information and understanding, Defendants have sent hundreds of thousands of automated text-messages to the cellphones of thousands of Florida residents after receiving a "Stop" reply text message. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable. Members of the Class can be identified, and Class membership ascertained, objectively through Defendants' records.

38.   ***Typicality***: Plaintiff's claims are typical of the claims of other members of the Class in that both Plaintiff and the Class sustained damages arising out of Defendants' uniform policies pertaining to sending automatic text-messages without obtaining prior express consent.

39.   ***Commonality***: There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

      i.     Whether Defendants made non-emergency text-messages to Plaintiff's and Class members' cellular telephones using an ATDS;

      ii.    Whether Defendants can meet their burden of showing that they obtained prior express written consent to send the text-messages at issue;

      iii.   Whether Defendants sent text-messages to Plaintiff and the class using an ATDS after receiving a "stop" opt-out reply.

      iv.   Whether Defendants' conduct was knowing and willful;

      v.    Whether Defendants are liable for damages, and the amount of such damages; and

      vi.   Whether Defendants should be enjoined from such conduct in the future.

The common questions in this case will have common answers. If Plaintiff's claim that Defendants routinely transmit text-messages to cellphones without obtaining prior express consent

is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

40.     *Adequacy of Representation:* Plaintiff will fairly and adequately represent and protect the interests of the Class and Defendants have no defenses unique to Plaintiff. Plaintiff has retained counsel competent and experienced in complex class actions and has no interest antagonistic to those of the Class'.

41.     *Superiority & Manageability*: Class proceedings in the instant matter are superior to all other available methods to ensure fair and efficient adjudication because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the class to obtain effective relief from Defendants' misconduct. Even if members of the class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court; economies of time, effort and expense will be fostered and uniformity of decisions ensured.

42.     *Ascertainability:* Members of the class will be easily ascertained through Defendants' records, or the records of their agents.

**COUNT I**
**VIOLATION OF THE TCPA. 47 U.S.C. § 227(b)**

Plaintiff reaffirms, realleges, and incorporates by reference paragraphs 1-30 as if fully set forth herein.

[1759890/1]                                    9

43.     Defendants used or caused to be used equipment having the capacity to dial numbers without human intervention to send telemarketing text messages to the cellular telephones of Plaintiff and the other members of the Class defined above.

44.     Defendants sent these text messages after receiving a "Stop" reply text-message, which Defendants represented would act as an "opt-out."

45.     Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an ATDS to send non-emergency text messages to the cellular telephones of Plaintiff and the other members of the Class without their prior express consent.

46.     As a result of the forgoing, Plaintiff and the class suffered damages, including invasion of privacy.

47.     Pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class are each entitled to a minimum of $500.00 in damages for each violation.

**WHEREFORE**, Plaintiff, Courtney Silverman, on behalf of herself and all others similarly situated, prays the Court for an Order awarding:

a.      $500.00 in statutory damages for each violation of the TCPA;

b.      $1,500.00 in statutory damages for each violation of the TCPA deemed willful or knowing;

c.      a permanent injunction prohibiting Defendants from using an automatic telephone dialing system to call and text-message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d.      litigation costs; and

e.      such other and further relief as the Court deems proper.

## JURY TRIAL REQUEST

Plaintiff and the class respectfully requests a jury trial on all issues to triable.

Respectfully submitted this 17th day of September, 2018, by:

ZEBERSKY PAYNE, LLP
110 S.E. 6th Street, Suite 2150
Ft. Lauderdale, Florida 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781
Primary Email:    jshaw@zpllp.com
Secondary Email: mperez@zpllp.com

By _____
JORDAN A. SHAW, ESQ.
Fla. Bar No. 111771
KIMBERLY A. SLAVEN
Fla. Bar No. 117964